AERO MOTIVE SALES CORPORATION, Appellant, vs. WAUSAU MOTOR PARTS COMPANY, Respondent.

*March 6—April 5, 1950.*

588

%

11%

19%

For the appellant there was a brief by *Smith, Okoneski, Puchner & Tinkham* of Wausau, and oral argument by *Richard P. Tinkham.*

For the respondent there was a brief by *Genrich & Terwilliger,* attorneys, and *Walter H. Piehler* and *Emil A. Wa-*

*keen* of counsel, all of Wausau, and oral argument by *Herbert Terwilliger.*

FAIRCHILD, J.   A contract is conceded to exist.   It is also conceded that the respondent is indebted to the appellant. The question presented on this appeal is: Do the terms of that contract preclude the appellant from having payment of the balance due him in cash?

The trial court ruled "that the contract did not provide for cash payment," thus limiting the appellant's right to satisfy his claim by the purchase of merchandise from the respondent. The contract, as made up by the letters referred to in the statement of facts, permits the appellant to take its compensation either in cash or in merchandise.   There is nothing in the contract itself which excludes the appellant from the right to his payment in cash.   Every agreement ought to receive a reasonable construction, and the true intent of the parties is to be carried into effect.   The contract contains a provision under which the appellant was to have the right to insist upon quarterly adjustments or payment based on "volume compensation."   The appellant was the distributor of the respondent's merchandise.   It was understood that the purchasing or distributing by it of a certain quantity of respondent's material under the table providing for volume compensation entitled the appellant to advantages in price, and under conditions described in the contract fixed the terms on which the credit was to be based.   There were to be quarterly adjustments.

The word "payment" is used, the word "credit" is used, and in the respondent's letter, which is a part of the contract, there appears the following: "And, under the circumstances, there seems reasonable justification for quarterly payment of volume compensation.   We will therefore credit your account quarterly on the basis of volume compensation earned for the quarter, prorated and extended to determine the proper rebate bracket and it's understood that an adjustment will be

made at the end of each year, either way. If an overpayment has been made there will be a charge back to you; if an underpayment has been made, there will be additional credit issued to cover." The foregoing includes the idea of payment, credit, debit. The word "payment" and the words "quarterly payment" and "volume compensation" are of consequence if interpretation is necessary, for they indicate the intention of the parties. The words "payment," "credit," etc., with time fixed for ascertaining amounts due, lead to a reasonable approach to a fair construction of the written agreement.

The contract certainly was intended to express the idea of payment, whether the credit was in the favor of the distributor or in favor of the manufacturer. If at an intermediate quarterly period for settlement between the parties the distributor was indebted to the manufacturer, it would seem that a reasonable construction would require the distributor to account in cash if the manufacturer so elected. The fact that the account was to be credited quarterly on basis of "compensation earned for the quarter, prorated and extended to determine the proper rebate bracket" does not exclude the idea of payment in cash. We have quoted enough of the agreement to show the possibilities of requirements of adjustment between the parties.

The respondent advances the argument that, by using credit and not having demanded cash prior to the end of the year, a practical construction has come into being and the doctrine of estoppel, by adopting a course of conduct, must be given weight. However, one who transacts his business with another in manner permissible under and consistent with the terms of the contract does not create an alteration of the controlling stipulations nor limit the terms to a single method of payment. There was no element of chance, no misleading of respondent. The ascertainment of the amounts due at different times was provided for and fixed. The words "credit," "charge back" do not cancel out the provisions in the

contract for payment, nor the method by which the time and payment are to be determined. Payment, under the circumstances existing here, in its full significance is not overcome by anything, of course, chargeable to the appellant in or under the contract.

An agreement between the parties that payments falling due and the amount thereof having been arrived at, providing that credit be extended to whichever party the balance is in favor of quarterly, would fall under the general doctrine which would permit the appellant to recover the amount due it.

We recognize the fact that contracts have been made providing for payment in specific articles or "in kind." It will generally be found in those cases that a precise provision limiting the payment in merchandise is set forth. However, this agreement, fixing the time of payment or allowing credit, stands as an agreement to satisfy the claim of the appellant in the manner he may demand. After the time for quarterly payment mentioned in the agreement has come about, the provision runs into money and ought to be considered as an obligation for the payment of money. It is then a fixed and determined amount. We have the certainty, then, of a contract term, the time for adjustment having been determined and the amount due fixed. It is not a contract specially constructed for payment by delivery of goods. The one in whose favor the balance is, has become entitled to recover the amount due.

The action appears to be based on the contract of 1946. This contract reached its period of completion with the balance in favor of the appellant. As stated upon the argument, a new contract was entered into in 1947. This leaves the parties to adjust their differences under the terms of the 1946 contract, and under the terms of that agreement the appellant is entitled to recover his commissions fixed by the table of volume compensation. That amount does not appear

to be in dispute. It was earned by the appellant as the sales distributor of the respondent's products during 1946.

It was stated during the argument that the parties to the agreement were still transacting business with each other to some extent, and that by reason thereof certain credits have been created which are in favor of the respondent. Those items, of course, must be taken into consideration upon the case being returned to the circuit court.

The judgment of the trial court is reversed for the reason of misconstruction of the contract, and the cause is to be remanded with direction to enter judgment in favor of the appellant pursuant to its motion for summary judgment, making due allowance for such claims as have come into existence since the action was begun.

*By the Court.*—Judgment reversed, cause remanded, with direction to set aside the judgment in defendant's favor and grant judgment to plaintiff in accordance with this opinion.